IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOHAMMAD MANSOUR and MARK MOSES, <br><br> Plaintiffs, <br><br> v. <br><br> FACTORY DIRECT OF SECAUCUS, LLC d/b/a ASHLEY FURNITURE HOMESTORE, <br><br> Defendants. | ECF CASE <br><br> Civil Action No. 13-cv-2443-SDW-SCM |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**ARCHER & GREINER, P.C.**
Court Plaza South - West Wing
21 Main Street, Suite 353
Hackensack, New Jersey 07601
Phone: (201) 342-6000
Fax:  (201) 342-6611
*Attorneys for Defendant*

On the Brief:
Michael S. Horn. Esq.

<u>**TABLE OF CONTENTS**</u>

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 1

ARGUMENT ................................................................................................................... 5

    I.       SUMMARY JUDGMENT STANDARD ........................................................... 5

    II.     SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS' DISCRIMINATION CLAIMS .................................................................. 6

    III.    SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS' RETALIATION CLAIMS ........................................................................ 10

          A.     Moses and Mansour Have Not Demonstrated That They Were Engaged In Protected Activity That Was Known By The Decision Makers ................................................................................. 12

          B.     Moses And Mansour Cannot Establish A Casual Connection Between Their Filing A Charge With The EEOC And Their Discharge ............................................................................... 12

          C.     Moses And Mansour Cannot Demonstrate That Defendant's Reasons For Terminating Their Employment Are Pretext ..................... 13

    IV.    SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS' DAMAGES CLAIMS ................................................................................ 13

    V.     THE COURT SHOULD TAKE JUDICIAL NOTICE OF MANSOUR'S GRAND JURY INDICTMENT AND PLEA OF GUILTY ............................... 14

    VI.    THE COURT SHOULD SEVER OUT THE CLAIMS BY MOSES AND MANSOUR ................................................................................... 14

CONCLUSION .............................................................................................................. 16

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Abramson v. William Paterson Coll. of New Jersey,*
260 F.3d 265 (3d Cir. 2001) ................................................................................10

*Almodovar v. Freeman Decorating Co.,*
2009 WL 704383 (D.N.J.) .....................................................................................7

*In re American Biomaterials Corp.,*
954 F.2d 919 (3d Cir. 1992) ................................................................................14

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ...............................................................................................5

*Andrews v. Marriot,*
2008 U.S. Dist. LEXIS 50590 (D.N.J. June 25, 2008) ..........................................9

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.,*
974 F.2d 1358 (3d Cir. 1992) ................................................................................5

*Bowles v. City of Camden,*
993 F. Supp. 225 (D.N.J. 1998) ............................................................................8

*Bowles v. City of Camden,*
993 F. Supp. 255 (D.N.J. 1998) ..........................................................................12

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ...............................................................................................5

*Clark Co. Sch. Dist. v. Breeden,*
532 U.S. 268 (2001) .............................................................................................12

*Fuentes v. Perskie,*
32 F.3d 759 (3d Cir. 1994) ..............................................................................8, 11

*Henan Oil Tools, Inc. v Engineering Enterprises, Inc.,*
262 F. Supp. 629 (S.D. Tex. 1966) .....................................................................15

*Huston v. P&G Paper Prods. Corp.,*
568 F.3d 100 (3d Cir. 2009) ..................................................................................6

*Idzojtic v. Pennsylvania R.R. Co.,*
456 F.2d 1228 (3d Cir. 1972) ..............................................................................15

*Jones v. Sch. Dist. of Phila.*,
198 F.3d 403 (3d Cir. 1999)......................................................................................7, 12

*Mansuso v. City of Atlantic City*,
193 F. Supp. 2d 789 (D.N.J. 2002) ...............................................................................11

*Mardell v. Harleysville Life Ins. Co.*,
65 F.3d 1072 (3d Cir. 1995).........................................................................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)........................................................................................................5

*McDonald v. Jones*,
427 Fed. Appx. 84 (3d Cir. 2011) ................................................................................14

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)........................................................................................................7

*Estate of Oliva ex rel. McHugh v. New Jersey*,
604 F.3d 788 (3d Cir. 2010).........................................................................................10

*McKennon v. Nashville Banner Publishing Co.*,
513 U.S. 352 (1995)......................................................................................................13

*Monaco v. American Gen. Assurance Co.*,
359 F.3d 296 (3d Cir. 2004)...........................................................................................6

*Reap v. Cont'l Cas. Co.*,
2002 U.S. Dist. LEXIS 13845 (D.N.J. June 28, 2002) .................................11, 12, 13

*Reed v. Philadelphia, Bethlehem & New England R.R. Co.*,
939 F.2d 128 (3d Cir. 1999).........................................................................................15

*Seaboard Terminals Corp. v Standard Oil Co.*,
30 F. Supp. 671 (DC NY 1939) ...................................................................................15

*Shaner v. Synthes (USA)*,
204 F.3d 494 (3d Cir. 2000)..........................................................................................11

*Shum v Intel Corp.*,
499 F.3d 1272 (CA 2007) .............................................................................................15

*Texas Department of Community Affairs v. Burdine*,
450 U.S. 248 (1981)....................................................................................................7, 8

*Tomoko Funayama v. Nichia Am. Corp.*,
482 Fed. Appx. 723 (3d Cir. 2012) ................................................................................6

iii

*Waldron v. SL Industries, Inc.*,
    56 F.3d 491 (3d Cir. 1995)............................................................................8

*West v. Hudson County Corr. Ctr.*,
    231 Fed. Appx. 136 (3d Cir. 2007).............................................................5

*Woodson v. Scott Paper Co.*,
    109 F.3d 913 (3d Cir. 1994)......................................................................10

**State Cases**

*Bergen Commercial Bank v. Sisler*,
    157 N.J. 188, 723 A.2d 944 (1999)............................................................7

*Carmona v. Resorts Int'l Hotel*,
    189 N.J. 354, 370, 915 A.2d 518, 528 (N.J. 2007) ..................................6

*Craig v. Suburban Cablevision, Inc.*,
    140 N.J. 623, 660 A.2d 505 (1995)..........................................................10

*Erickson v. Marsh & McLennan Co.*,
    117 N.J. 539, 549-50, 569 A.2d 793 (1990) .......................................6, 10

*House v. Carter-Wallace, Inc.*,
    232 N.J. Super. 42 (App. Div. 1989) .......................................................13

*Viscik v. Fowler Equipment Co., Inc.*,
    173 N.J. 1 (2002) ........................................................................................8

*Williams v. Pemberton Twp. Schools*,
    323 N.J. Super. 490 (1999) ........................................................................7

*Zive v. Stanley Roberts*,
    182 N.J. 436, 867 A.2d 1133 (2005)..........................................................7

**Rules**

Fed. R. Civ. P. 42(b)......................................................................................15

Fed. R. Civ. P. 56(a).......................................................................................5

Fed. R. Evid. 201(b)......................................................................................14

**Constitutional Provisions**

Seventh Amendment......................................................................................15

## PRELIMINARY STATEMENT

Despite Mohammed Mansour ("Mansour") stealing from Factory Direct of Secaucus, LLC d/b/a Ashley Furniture Homestore ("Defendant") and Mark Moses ("Moses", collectively with Mansour, "Plaintiffs") failing to meet the sales goals of his position, Plaintiffs are now suing Defendant for discrimination and retaliation.   Any facts showing that Defendant discriminated or retaliated against the Plaintiffs are absent from the record.  The record clearly establishes that Mansour resigned from his job after being confronted with evidence of theft. The record also clearly establishes that Moses, despite being provided with training on numerous occasions, failed to meet his sales goals.  Moses resigned from his job after expressing that he was unhappy with his current position.  Neither Mansour nor Moses have provided even a scintilla of evidence that they were discriminated or retaliated against on the basis of their race, religion or national origin.  Furthermore, the U.S. Equal Employment Opportunity Commission ("EEOC"), after its investigation, concluded that information obtained from both Mansour and Moses failed to establish a violation of federal law on the part of Defendant regarding their separations from employment.

Therefore, summary judgment should be granted in favor of Defendant and against Plaintiffs.

## STATEMENT OF FACTS

### *Statement of Facts Related to Mohammed Mansour*

Defendant hired Mansour to work at its Paramus, new furniture store as a full time products specialist.  *See* Horn Dec. Ex. 19 at 51:11-13.  Defendant promoted Mansour to the position of sales manager.  *See* Horn Dec. Ex. 19 at 51:14-18.  Thereafter, Defendant discovered that Mansour was stealing.  *See* Horn Dec. Ex. 15 at 57:11-58:3.

1

On January 16, 2012, Defendant became aware that a number of pieces of furniture were missing from the store's Clearance Department, where Mansour was known to spend most of his time. *See* Horn Dec. Ex. 13. On January 17, 2012, Mansour was called into a meeting regarding the missing pieces of furniture. *See* Horn Dec. Ex. 13. Defendant had footage on a security camera of Mansour stealing merchandise out of the back of Defendant's warehouse and loading it onto trucks. *See* Horn Dec. Ex 16 at 43:11-44:7. After being confronted with evidence of the theft, Mansour resigned from his position with Defendant. *See* Horn Dec. Ex. 13; Ex. 16 at 41:24-42:4.

On January 18, 2012, the police were dispatched to the Defendant's store regarding a report of theft by Mansour regarding an incident with a customer named Dina Yousef ("Yousef"). *See* Horn Dec. Ex. 5 at 4:23-5:22. Yousef purchased furniture through Mansour making two cash installment payments to Mansour, one on January 2, 2012 for $500 and another on January 7, 2012 for $3,009.48, for a total of $3,509.48. *See* Horn Dec. Ex. 5 at 6:11-25. In exchange for these cash payments, Mansour printed out a receipt for Yousef and wrote on it "paid in full" and Yousef gave him the money in cash. *See* Horn Dec. Ex. 5 at 7:1-8. The cash payment never made it into the payroll system in the computer because Mansour physically took the money, and then in the computer system withdrew those items from the computer as though they did not exist. *See* Horn Dec. Ex. 5 at 7:10-18. Mansour then told Yousef that she would be getting the delivery on January 21, 2012. *See* Horn Dec. Ex. 5 at 7:19-22. This delivery never took place because no such delivery was in the computer system and had been deleted from the system. *See* Horn Dec. Ex. 5 at 7:23-8:10.

On July 12, 2012, there was a grand jury proceeding regarding Mansour's theft from Defendant, which resulted in an incitement of Mansour. *See* Horn Dec. Ex 5. Mansour pleaded guilty to the theft charges. *See* Horn Ex. 6.

Following his resignation, Mansour began to publish false and defamatory statements about Defendant, its management, and its business on his personal "linkedin.com" webpage. *See* Horn Dec. Ex. 7. On April 24, 2012, Defendant filed a complaint against Mansour related to Mansour's publishing false and defamatory statement about Defendant, its management, and its business on his personal "linkedin.com" webpage. *See* Horn Dec. Ex. 8. On July 27, 2012, the Honorable Hector R. Velazquez granted Defendant an Order Enforcing Litigants Rights ordering that Mansour remove the postings from his personal "linkedin.com" webpage. *See* Horn Dec. Ex. 9.

Subsequent to working for Defendant, Mansour worked as a store manager at Hoffman Koos. *See* Horn Dec. Ex. 19 at 11:2-15. Mansour was charged with theft related to his manipulation of the computer system as Hoffman Koos. *See* Horn Dec. Ex. 4.

Following his resignation, Mansour filed a charge with the EEOC. On January 31, 2013, the EEOC determined that based on its investigation, the EEOC was unable to conclude that information obtained established a violation of federal law on the part of Defendant regarding Mansour's separation from employment. *See* Horn Dec. Ex. 20.

### *Statement of Facts Related to Mark Moses*

Moses was trained by Defendant to be a Sales Manager from June 28, 2011 through July 28, 2011. *See* Horn Dec. Ex. 18 at 45:11-16; Ex. 14. Mansour was the manager of the department where Moses worked. *See* Horn Dec. Ex. 15 at 22:22-23:4. Moses was demoted

from his role as Sales Manager in training.  *See* Horn Dec. Ex 15 at 22:16-19.  Moses was demoted because he was not able to meet his sales goals.  *See* Horn Dec. Ex. 15:3-12; Ex. 21.

Moses never complained of discriminatory or offensive statements in the workplace to Jerry Cook, who was Defendant's Director of Sales.  *See* Horn Dec. Ex. 16 at 22:5-8.  No employee or representative of Defendant ever told Moses that he was demoted due to race, religion, or national origin.  *See* Horn Dec. Ex. 18 at 64:2-9.  Moses' non-performance problems were known to Defendant's management.  *See* Horn Dec. Ex. 17 at 42:16-24.

Defendant provided Moses with training in an effort to help his performance.  *See* Horn Dec. Ex. 16 at 23:22-24:22.  Moses told Jerry Cook, Defendant's Director of Sales, that the expectations of the job were more than he was capable of doing.  *See* Horn Dec. Ex 16 at 26:2-17.  Moses fell asleep during an employee meeting.  *See* Horn Dec. Ex. 17 at 44:20-45:15.  Moses was told that if his performance improved, that he would be considered for other store manager positions in the future.  *See* Horn Dec. Ex. 18 at 60:7-11.

On August 3, 2011, Moses expressed his dissatisfaction with his job to Aazel Bausista, who was employed in Defendant's Human Resources Department, and Moses and Ms. Bautista agreed that the best thing would be for Moses and Defendant to part ways and then Moses resigned from his employment with Defendant.  *See* Horn Dec. Ex. 14.  No employee or representative of Defendant ever told Moses that his separation of employment was due to race, religion or national origin.  *See* Horn Dec. Ex. 18 at 65:15-22.

Following his resignation, Moses filed a charge with the EEOC.  On January 18, 2012, the EEOC determined that based on its investigation, the EEOC was unable to conclude that information obtained establishes a violation of federal law on the part of Defendant regarding Moses' separation from employment.  *See* Horn Dec. Ex. 18.

## ARGUMENT

## I.      SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The threshold inquiry with respect to any such action is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably by resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Under this Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the non-moving party has provided evidence to show that a question of material fact remains. *See Celotex*, 477 U.S. at 324. Put another way, once the moving party has properly supported a showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," *Id.* at 322, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

What the non-moving party must do is "go beyond the . . . depositions, answers to interrogatories and admissions on file and designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Conclusory allegations, either in a Complaint or in an affidavit, are not adequate to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249, *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). A plaintiff's subjective belief does not create an issue of fact for a jury. *See West v. Hudson County Corr. Ctr.*, 231 Fed. Appx. 136, 139 (3d Cir. 2007) ("[P]laintiff could not establish a *prima facie* case of retaliatory firing based on her erroneous subjective belief.").

As explained below, there are no disputed material issues of fact to be tried in this case.

## II.  SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS' <u>DISCRIMINATION CLAIMS</u>

Both Title VII and the New Jersey Law Against Discrimination ("NJLAD") prohibit discrimination on the basis of national origin or race.  Employer liability for the alleged actions of an employee's non-supervisory co-worker is limited: "employer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action. . . .  That is, an employer may be directly liable for non-supervisory co-worker sexual harassment only if the employer was negligent in failing to discover the co-worker harassment or in responding to a report of such harassment."  *Huston v. P&G Paper Prods. Corp.*, 568 F.3d 100, 104-105 (3d Cir. 2009).  To support an allegation of a hostile work environment, a plaintiff must demonstrate harassment so severe or pervasive that it changed the conditions of employment and created an abusive work environment.  *Tomoko Funayama v. Nichia Am. Corp.*, 482 Fed. Appx. 723, 725 (3d Cir. 2012).

In general, Courts apply a similar analysis to discrimination claims brought pursuant to Title VII and the NJLAD.  *See Carmona v. Resorts Int'l Hotel*, 189 N.J. 354, 370, 915 A.2d 518, 528 (N.J. 2007) ("we have frequently looked to case law under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, for guidance in developing standards to govern the resolution of LAD claims."); *Erickson v. Marsh & McLennan Co.*, 117 N.J. 539, 549-50, 569 A.2d 793 (1990) (explaining that New Jersey Supreme Court has adopted methodology of proof used in Title VII cases for use in NJLAD cases); *Monaco v. American Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004).

The test for claims under Title VII and NJLAD is well established.  The plaintiff has the burden of proving both a *prima facie* case of employment discrimination and also rebutting any legitimate non-discriminatory explanation offered by the employer for its actions.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  Section 1981 employment discrimination claims are also analyzed under the burden-shifting framework set forth in *McDonnell Douglas*.  *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999).

A claim of discriminatory discharge under Title VII and the NJLAD may be based on either direct or circumstantial evidence.  *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 208, 723 A.2d 944, 954 (1999).  Where, as here, Plaintiffs do not present evidence of direct discrimination, then Plaintiffs must prove Defendant's alleged discriminatory intent through circumstantial evidence using the burden-shifting methodology described by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The *McDonnell Douglas* standard is a three-stage process, the first stage of which requires the plaintiff to prove, by a preponderance of the evidence, a *prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824, 36 L. Ed.2d at 677.  To establish a *prima facie* case of discriminatory discharge under the NJLAD, a plaintiff must show that: (1) he belongs to a protected class; (2) he was performing at a level that met his employer's expectations; (3) he was terminated; and (4) his employer then sought someone else to perform the same work.  *Zive v. Stanley Roberts,* 182 N.J. 436, 457, 867 A.2d 1133 (2005); *Almodovar v. Freeman Decorating Co.*, 2009 WL 704383 (D.N.J.) at *3; *Williams v. Pemberton Twp. Schools*, 323 N.J. Super. 490, 499 (1999).  A Title VII discriminatory discharge claim requires substantially the same elements – "essentially, that [plaintiff] is a member of a protected class

and was qualified for an employment position, but that he or she …was fired from it under circumstances that give rise to an inference of unlawful discrimination."  *See Waldron v. SL Industries, Inc.*, 56 F.3d 491, 494 (3d Cir. 1995).

Only if the plaintiff can establish a *prima facie* case, does the burden of production then shift to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employee termination.  *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1994); *Burdine*, 450 U.S. at 253.  The employer's burden is one of production only.  If the employer satisfies this burden of production, the burden "then rebounds to plaintiff who must now show by a preponderance of the evidence that the employer's explanation is pretextual."  *Id.*

Here, neither Mansour nor Moses can satisfy a *prima facie* case because they both resigned from the Company.  Their employment was not terminated.  Plaintiffs have failed to demonstrate that the reasons for their separations of employment with Defendant were pretextual.  Even if Plaintiffs were able to prove their *prima facie* case, they will not be able to establish by record evidence that Defendant's legitimate nondiscriminatory reasons for terminating their employment were a pretext for racial or national origin discrimination.

"Pretext is a purpose or motive alleged or an appearance assumed in order to cloak the real intent or state of affairs, 'in essence, pretext, is a 'cover-up' for a discriminatory purpose.'" *Bowles v. City of Camden*, 993 F. Supp. 225, 262 (D.N.J. 1998).  For Plaintiffs to demonstrate pretext, they must produce evidence which establishes a "reasonable inference that [Defendant's] proffered reason for [their] termination was weak, implausible, inconsistent, incoherent or contradictory."  *Id*.  In other words, Plaintiffs must do more that show than Defendant's reason for the separation of their employment was false (which it was not); they must also demonstrate that the decision was motivated by a discriminatory intent.  *Viscik v. Fowler Equipment Co., Inc.*,

8

173 N.J. 1, 14 (2002); *Andrews v. Marriot*, 2008 U.S. Dist. LEXIS 50590 at *7-8 (D.N.J. June 25, 2008).

Mansour, who was found to be stealing, cannot demonstrate the Defendant's proffered reasons were fabricated or that they did not actually motivate the employment action.  There is no record of evidence that Mansour's religion or national origin affected his separation of employment with Defendant.  Rather, the overwhelming record evidence indicates that Mansour's employment with Defendant is littered with violations of company policies and theft.  Mansour has not provided any evidence to indicate that his separation of employment was as a result of his religion or national origin.  Here, Mansour's own actions ultimately lead to his separation.  He chose to resign after being confronted with evidence of his theft.  Even if he was able to prove a *prima facie* case of discriminatory discharge – which he cannot – all of the above facts demonstrate that Defendant had legitimate, nondiscriminatory reasons for terminating Mansour's employment because he was stealing from Defendant.  There is simply no evidence suggesting that such reason was a pretext for discrimination based on Mansour's religion or national origin.

Similarly, Moses, who was not able to meet his sales goals, cannot demonstrate the Defendant's proffered reasons were fabricated or that they did not actually motivate the employment action.  There is no record of evidence that Moses' race, religion or national origin affected Defendant's decisions relating to his employment.  Rather, the overwhelming record evidence indicates that Moses' employment with Defendant is littered with his non-performance problems despite repeated training in an effort to help Moses improve his sales goals.  Here, Moses own actions ultimately led to his resignation.  Moses elected to resign after expressing that he was not happy with his current position.  Even if Moses was able to prove a *prima facie*

9

case of discriminatory discharge – which he cannot – all of the above facts demonstrate that Defendant has a legitimate, nondiscriminatory reason for terminating is employment because he was not meeting the level of performance required by Defendant.  There is simply no evidence suggesting that such reason was a pretext for discrimination based on Moses' race, religion or national origin.  Defendant was provided with training to help his performance and would have been considered for a managerial position has his performance improved.

The record demonstrates that there are no material facts as to Plaintiffs' discrimination claims.  For this reason, summary judgment should be granted in favor of Defendant and against Plaintiffs on their discrimination claims.

## III.   SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS' RETALIATION CLAIMS

To advance a *prima facie* case of retaliation under Title VII and the NJLAD, a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action.  *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001); *Erickson v. Marsh & McLennan Co.*, 117 N.J. 539, 560 (1990).  In addition, New Jersey courts have required that the employee show that he or she engaged in protected activity known to the employer.  *Id.* at 286; *Craig v. Suburban Cablevision, Inc.*, 140 N.J. 623, 629, 660 A.2d 505, 508 (1995).  The same standard applies in Section 1981 retaliation cases. *See Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010)

Analysis of NJLAD retaliation claims follows the burden-shifting framework established for disparate treatment claims under Title VII and the LAD.  *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1994).  Plaintiffs bear the initial burden of establishing a *prima facie*

case of retaliation. *Mansuso v. City of Atlantic City*, 193 F. Supp. 2d 789, 809-810 (D.N.J. 2002). Once a plaintiff establishes a *prima facie* case of retaliation, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action taken. *See Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994).

To defeat a motion for summary judgment, Plaintiffs must present evidence which, if believed, would permit a fact-finder to disbelieve the proffered reason or belief that retaliation was more likely than not a motivating or determinative cause of Defendant's actions. *Id*. at 764. The ultimate burden of persuasion that retaliatory intent has "a determinative effect" on Defendant's decision remains at all times with Plaintiffs. *Reap v. Cont'l Cas. Co.*, 2002 U.S. Dist. LEXIS 13845 at *73 (D.N.J. June 28, 2002), *citing Shaner v. Synthes (USA)*, 204 F.3d 494, 501 n. 8 (3d Cir. 2000).

Here, Moses and Mansour cannot satisfy the elements of a *prima facie* case. They have not established that the supervisors who they allege engaged in retaliatory actions throughout their employment were aware that they filed a claim with the EEOC (which was done after both Moses and Mansour were no longer employed by Defendant), and they have failed to establish a casual connection between their filing a claim and separation from employment. Again, it was both Moses and Mansour who each decided to resign from their employment with Defendant. Neither Moses' nor Mansour's employment was terminated by the Defendant. Even if Moses and Mansour could establish a *prima facie* case, their retaliation claims must fail because, for the same reasons their discrimination claims are defective, they cannot demonstrate that Defendant's legitimate, non-discriminatory reasons for their discharge were pretexts for discrimination.

### A.   Moses and Mansour Have Not Demonstrated That They Were Engaged In Protected Activity That Was Known By The Decision Makers

A supervisor cannot be considered to be retaliating against an employee if the alleged protected activity by the employee is not known to the supervisor or decision maker. *See Jones v. Schoo Dist. of Philadelphia*, 198 F.3d 403, 415 (3d Cir. 1999) (supervisor cannot retaliate against employee for filing an EEOC charge if the supervisor had no knowledge of the charge); *Reap v. Cont'l Casualty Co.*, 2002 U.S. Dist. LEXIS 13845 at *65 (D.N.J. June 28, 2002) (rejecting plaintiff's retaliation claim and noting that a supervisor "could not have been retaliating against [plaintiff] in her performance evaluations for an EEOC charge about which he had no knowledge").  Here, both Moses and Mansour fail to provide any evidence that they were engaged in a protected activity.  Moses filed his EEOC charge after his employment with Defendant ended because he was not meeting his sales goals.  Mansour filed his EEOC charge after his employment with Defendant ended because of theft.  As a result, both Moses and Mansour have failed to establish that the individuals to whom they attribute retaliatory (and discriminatory) conduct knew that they were engaged in a protected activity.  Accordingly, both Moses and Mansour have failed to satisfy the first prong of their *prima facie* case.

### B.   Moses And Mansour Cannot Establish A Casual Connection Between Their Filing A Charge With The EEOC And Their Discharge

It is well established that close temporal activity, by itself, does not establish retaliatory behavior.  Even though it is a requirement that an employer's action must occur with a "very close" temporal proximity to an employee's protected activity, *Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001), a plaintiff must show more than a short interval between the protected activity and the alleged adverse action.  In *Bowles v. City of Camden*, 993 F. Supp. 255, 264 (D.N.J. 1998), the Court explained that there must be "further evidence supporting a casual connection" to defeat summary judgment.  In addition, New Jersey courts have found a

relatively short period of time between engaging in a protected activity and an alleged adverse action to sever a casual connection.  *See House v. Carter-Wallace, Inc.*, 232 N.J. Super. 42, 51 (App. Div. 1989) (three-month gap negated casual connection).  It also is well established that an interviewing event between the protected activity and the adverse action may sever a casual connection.  *Reap v. Cont'l Casualty Co.*, 2002 U.S. Dist. LEXIS 13845 (D.N.J. June 28, 2002). Here, both Moses and Mansour filed their EEOC charges after their separation from Defendant. Therefore, the record fails to show that the EEOC charges were connected to their separation from employment.  Accordingly, Moses and Mansour have failed to satisfy the third prong of a *prima facie* case.

### C. Moses And Mansour Cannot Demonstrate That Defendant's Reasons For Terminating Their Employment Are Pretext

Moses and Mansour cannot demonstrate termination because they were neither of them were terminated from employment with Defendant, they both resigned.  However, even assuming that Moses and Mansour could establish a *prima facie* case, which they cannot, their claims must still fail because there is no record evidence to demonstrate that the reasons for the separation of their employment are pretext for retaliation.

Accordingly, for the reasons discussed above in Point II, Moses and Mansour have failed to demonstrate that the separation of their employment was a pretext for discrimination.

### IV. SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS' DAMAGES CLAIMS

Even if Plaintiffs could support claims of discriminatory or retaliatory discharge – which they cannot – Plaintiffs still could not prove any damages.  When an employer who is accused of wrongful discharge discovers "after-acquired evidence" that itself would have resulted in the employee's discharge, an award of backpay runs only until the date such evidence is discovered. *Mardell v. Harleysville Life Ins. Co.*, 65 F.3d 1072, 1073 (3d Cir. 1995), *citing McKennon v.*

*Nashville Banner Publishing Co.*, 513 U.S. 352 (1995).  In this case, the Company discovered such "after-acquired evidence" the day after Mansour's employment was terminated, when it discovered that, in addition to stealing the furniture which was earlier known, it now became also known that he had stolen money from customers, the Yousefs, and further manipulated the Company systems.  As such, Mansour has no damages.  Likewise, Moses has failed to establish any damages.

## V.     THE COURT SHOULD TAKE JUDICIAL NOTICE OF MANSOUR'S GRAND JURY INDICTMENT AND PLEA OF GUILTY

Under Fed. R. Evid. 201(b), a court take judicial notice of a fact that is "not subject to reasonable dispute" in that it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See* Fed. R. Evid. 201(b).  On July 12, 2012, there was a grand jury proceeding regarding Mansour's theft from Defendant, with respect to which Mansour was indicted.  *See* Horn Dec. Ex 5.  Mansour pleaded guilty to the theft charges.  *See* Horn Ex. 6.  Both the indictment and guilty plea are matters of public record.  Therefore, this Court should take judicial notice of both the indictment and guilty plea.  *See McDonald v. Jones*, 427 Fed. Appx. 84, 85 fn. 1 (3d Cir. 2011) ("Like the District Court, we take judicial notice of the state court proceedings, which are a matter of public record."); *In re American Biomaterials Corp.*, 954 F.2d 919, 922 (3d Cir. N.J. 1992) (taking judicial notice of guilty pleas).

## VI.    THE COURT SHOULD SEVER OUT THE CLAIMS BY MOSES AND MANSOUR

The Federal Rules of Civil Procedure specifically state:

Separate Trials.  For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial.

*See* Fed. R. Civ. P. 42(b).

Either plaintiff or defendant may avail himself of Rule 42(b).  *See Seaboard Terminals Corp. v Standard Oil Co.*, 30 F. Supp. 671 (DC NY 1939); *Henan Oil Tools, Inc. v Engineering Enterprises, Inc.*, 262 F. Supp. 629 (S.D. Tex. 1966).  District courts have broad discretion with regard to trial management, and Fed. R. Civ. P. 42(b) provides that district court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order separate trial of any claim, crossclaim, or counterclaim, always preserving inviolate right of trial by jury as declared by Seventh Amendment to or as given by statute.  *See Shum v Intel Corp.*, 499 F.3d 1272 (CA 2007); *Idzojtic v. Pennsylvania R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972) ("The district court is given broad discretion in reaching its decision whether to separate the issues of liability and damages").  The Third Circuit has recognized that "the trial judge is entrusted with discretion [to decide case management issues, such as bifurcation] because he is in a far better position than we to appraise the effect of a particular procedure on the parties."  *Reed v. Philadelphia, Bethlehem & New England R.R. Co.*, 939 F.2d 128, 133 (3d Cir. 1999).

Here, the claims by Moses and Mansour should be separate.  The reasons related to why they are no longer employed with Defendant are not related.  Moses suffered from poor performance and resigned from his employment with Defendant because he was unhappy.  Mansour stole from Defendants and resigned from his employment with Defendant after he was confronted with evidence of his theft.  Therefore, separate trials would be conducive to expedition and judicial economy.

15

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion for summary judgment.

Dated:  January 30, 2015    **ARCHER & GREINER, P.C.**

            /s/ Michael S. Horn
            Michael S. Horn
            Court Plaza South - West Wing
            21 Main Street, Suite 353
            Hackensack, New Jersey 07601
            Phone: (201) 342-6000
            Fax:  (201) 342-6611
            Email:  mhorn@archerlaw.com

12094867v1